## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| I. FREDERICK SHOTKIN, | : | |
| ADMINISTRATOR OF THE ESTATE | : | |
| OF RHODA SHOTKIN, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:19-CV-01506 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Defendant. | : | DECEMBER 6, 2021 |

**RULING ON ORDER TO SHOW CAUSE (DOC. NO. 48)**

**I.     INTRODUCTION**

Plaintiff, I. Frederick Shotkin ("Mr. Shotkin"), Administrator of the Estate of Rhoda Shotkin, brings this action to quiet title under section 47-31 of the Connecticut General Statutes against defendant the United States of America.

Now before the court are the parties' responses to the court's Order to Show Cause why the original Complaint in this action should not be dismissed for a lack of jurisdiction.  See Order to Show Cause (Doc. No. 48); Compl. (Doc. No. 1);  Pl.'s Response to the Order to Show Cause (Doc. No. 51) ("Pl.'s Response"); Def.'s Response to Pl.'s Response to the Order to Show Cause (Doc. No. 55) ("Def.'s Response"); Pl.'s Reply to Def.'s Response to Pl.'s Response to the Order to Show Cause (Doc. No. 57) ("Pl.'s Reply"); Def.'s Sur-Reply to Pl.'s Reply to Def.'s Response to Pl.'s Response to the Order to Show Cause (Doc. No. 58-1) ("Def.'s Sur-Reply").  For the reasons discussed below, the court dismisses the original Complaint for a lack of jurisdiction.

## II.   BACKGROUND[1]

This matter began as a quiet title action when Rhoda Shotkin ("Mrs. Shotkin") filed a Complaint seeking to clear federal tax liens attached to property at 5 Brookside Drive, Westport, Connecticut ("the Property").

Mr. and Mrs. Shotkin, a married couple, acquired the Property in 1970.  See Pl.'s Response at 3. On June 22, 1982, Mr. Shotkin transferred his interest in the Property to Mrs. Shotkin by warranty deed.  Id.  In the early 2000s, Mr. Shotkin began to run into the tax trouble relevant to the instant case. Id.

The couple filed federal income tax returns, electing "married-filing-jointly" status, in 2006 and 2007.  Id.  In subsequent years, Mr. and Mrs. Shotkin elected "married-filing-separately" status on their returns and, in September 2011, the U.S. granted Mrs. Shotkin "Innocent Spouse Relief" for the years 2006 and 2007, freeing her from liability for any of Mr. Shotkin's violations of federal tax law. Id.

On November 10, 2014, Mrs. Shotkin mortgaged the Property and gave an adjustable-rate mortgage note to Mortgage Electronic Registration Systems ("MERS") as nominee for Urban Financial of America, LLC ("the Lender").[2] See id. at Ex. A ("Mortgage").[3]  The terms of the Mortgage establish Mr. Shotkin as a "Non-Borrowing

---

[1] The background is drawn from the Plaintiff's Complaint and Response to the Order to Show Cause at pages 3-5. Unless otherwise noted, the facts stated herein are not in dispute.

[2] The government's Complaint, filed August 31, 2021, suggests that Finance of America Reverse, LLC, has been assigned the Mortgage. See Complaint (Doc. No. 1), ¶ 5, 3:21-cv-01164-JCH. The plaintiff's filings, however, refer to Urban Financial of America, LLC, as "the Lender" throughout. In this Ruling, the court will use the term "the Lender" in reference to the current holder of the Mortgage against the Property.

[3] While MERS is named as mortgagee, it acts in that capacity solely as a nominee for the Lender, Urban Financial, as well as Urban Financial's successors and assigns.

Spouse." Id. at Ex. A ¶ 9.  Further, the amount due under the Mortgage and the note is due upon Mrs. Shotkin's death, but the payment of that amount will be deferred as long as Mr. Shotkin continues to reside lawfully in the Property.  Id. at Ex. A ¶ 10(a)(ii).  In the Mortgage agreement, Mrs. Shotkin covenanted that she owned the Property and that she would "defend the title to the Property against all claims and demands." Id. at Ex. A p. 2.  In the event that Mrs. Shotkin failed to defend the title, the Mortgage entitled the Lender to pay to protect the value of the property, adding the amount of any such payments as "additional debt" owed on and secured by the Mortgage.  Id. at Ex. A ¶ 5. However, the Mortgage is non-recourse, meaning Mrs. Shotkin has "no personal liability for payment of the debt secured by [the  Mortgage].  The Lender may enforce the debt only through sale of the Property." [4]  Id. at Ex. A ¶ 11.  According to the Administrator's inventory, which the government filed with this court, the debt secured by the Mortgage amounts to $469,846 and the Property is worth $900,000.  See Inventory (Doc. No. 44-6).

On June 24, 2019, the U.S. filed a notice of a federal tax lien on property held at the time by Mrs. Shotkin alone, naming Mrs. Shotkin "as nominee of Frederick Shotkin." See id. at 4; Lien Notice (Doc. No. 1; Doc. No. 44-8).  The government's Notice identifies a lien of $210,007.82 plus "additional penalties, interest, and costs that may

---

[4] While the Mortgage specifies that Mrs. Shotkin holds no personal liability for the debt secured by the Mortgage, the plaintiff argues that "the Property will be needed to satisfy the Lender's claims against the estate." See Pl.'s Response at 10. The court will address this assertion following. See pp. 10-15, infra.

accrue." <u>See</u> Lien Notice.[5]  Seeking to quiet title to the Property, Mrs. Shotkin filed the Complaint in this action on September 25, 2019.  <u>See</u> Compl. (Doc. No. 1).

On April 17, 2020, while this action was underway, Mrs. Shotkin passed away. She died intestate, <u>see</u> Probate Court Documents (Doc. No. 53), leaving behind her husband, Mr. Shotkin, as well as two children: Susan Shotkin Gascon ("Susan") and Matthew Shotkin ("Matthew").  Both Mr. Shotkin and Matthew filed disclaimers under section 45a-597(e)(2)(A) of the Connecticut General Statutes rejecting "any and all rights" in Mrs. Shotkin's Estate, including the Property.  <u>See</u> Probate Court Documents. The Probate Court for the District of Westport-Weston appointed Mr. Shotkin as Estate Administrator.

After Mrs. Shotkin's passing, this court granted a Motion on November 6, 2020, to substitute Mr. Shotkin, in his capacity as Administrator of Rhoda's Estate, as plaintiff.[6] <u>See</u> Mot. to Substitute Party (Doc. No. 30).  Subsequently, the Administrator filed a Motion for Summary Judgment on July 2, 2021.  Pl.'s Mot. for Summary J.  (Doc. No. 43).

The U.S. filed its own Motion for Summary Judgment on July 5, 2021.  Def.'s Mot. for Summary J. (Doc. No. 44).  On the same day, the U.S. also filed a Motion for Leave to File an Amended Answer, questioning whether the court had jurisdiction over the Complaint as written and seeking to add a counterclaim that would avoid the

---

[5] According to the government's filings, the amount that Mr. Shotkin owes on his assessed income taxes with penalties and interests totaled $300,966.54 as of May 24, 2021.  <u>See</u> Def.'s Response at 2.

[6] Hereinafter, the court refers to Mr. Shotkin, in his capacity as Administrator, as "the Administrator" or "the plaintiff." The court refers to Mr. Shotkin, in his capacity as an individual, as "Mr. Shotkin."

purported jurisdictional issue by joining additional parties.  See Mot. for Leave to File an
Am. Answer (Doc. No. 45).

To ensure that the court was properly briefed on the question of jurisdiction
before considering the merits of the parties' Motions for Summary Judgment, the court
issued an Order to Show Cause requiring (1) the plaintiff to show why this case should
not be dismissed for lack of jurisdiction and (2) the defendant to show cause how the
court could have authority to grant its Motion to Amend to add additional parties if
indeed it lacked jurisdiction.  See Order to Show Cause.

Both parties responded to the Order to Show Cause but, before this court could
rule on the issues raised in the Order, the U.S. filed a separate case against the
Administrator of Mrs. Shotkin's Estate as well as the additional defendants it sought to
add in its counterclaim, including: Mr. Shotkin, in his capacity as an individual; Matthew,
the Shotkins' son; Susan, the Shotkins' daughter; Finance of America Reverse, LLC,
the assignee of the Mortgage on the Property; and the Town of Westport, Connecticut,
the local taxing authority.  See Complaint (Doc. No. 1), 3:21-cv-01164-JCH.

In its Complaint, the government alleges two Counts.  It brings the First Count
against Mr. Shotkin to reduce his income tax liabilities to judgment, and the Second
Count against all parties to enforce the federal tax liens against the Property.  That case
has been consolidated into the instant docket by Order of this court on September 17,
2021.  See Order (Doc. No. 62).  The U.S. has withdrawn its Motion to Amend, as the
additional parties and claims have been added in the government's Complaint.  See
Motion to Withdraw Motion for Leave to File Amended Answer to Add a Counterclaim
(Doc. No. 60); Order (Doc. No. 62).

On December 2, 2021, the court held Oral Argument on the question of its jurisdiction over the original Complaint, and both parties addressed the court. [7]  With the benefit of full briefing and arguments, the court takes up the jurisdictional question now.

## III.    LEGAL STANDARD

### A.    12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

#### 1.    Mootness

A court must consider an impediment to subject matter jurisdiction "at any time" during the course of a litigation.  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 648 (2d Cir. 1998).  The issue of mootness is one of subject matter jurisdiction and may be raised at any point.  See Fox v. Board of Trustees, 42 F.3d 135, 140 (2d Cir.1994); see also Janakievski v. Exec. Dir., Rochester Psychiatric Ctr., 955 F.3d 314, 319 (2d Cir. 2020) ("If, as a result of changed circumstances, a case that presented an actual

---

[7] Counsel for Finance of America Reverse, LLC, a party named in the government's Complaint, was also heard at oral argument.

redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness.").  While the plaintiff bears the burden of proving subject matter jurisdiction, the defendant bears the burden of proving that a change of circumstances during the course of litigation has rendered a case moot.   See Mhany Management, Inc. v. City of Nassau, 819 F.3d 581, 603 (2d Cir. 2016).

## IV.   DISCUSSION

Two jurisdictional questions face the court: 1) whether the court had jurisdiction over the case when Mrs. Shotkin filed it and, if so, 2) whether Mrs. Shotkin's death deprived this court of jurisdiction.  The plaintiff argues that the court properly exercised jurisdiction over Mrs. Shotkin's Complaint, and that the court may maintain jurisdiction over this action despite Mrs. Shotkin's passing and Mr. Shotkin's substitution as plaintiff. See Pl.'s Response at 5-11.  The defendant, by contrast, contends that this action should have been filed in state court from the start and that Mrs. Shotkin's death caused the court's jurisdiction to lapse.  See Def.'s Response at 5.

Because the court agrees with the defendant that jurisdiction over the original Complaint was lost upon Mrs. Shotkin's passing, the court will not address whether the exercise of jurisdiction was proper when Mrs. Shotkin first filed the case.  The court turns instead to the question of its current power to adjudicate the claims in the original Complaint.

### A.   Whether Jurisdiction Lapsed Upon Mrs. Shotkin's Death

Even if jurisdiction was proper when Mrs. Shotkin initially filed this action, the defendant argues that the court can no longer exercise jurisdiction over the original Complaint, because it became moot upon Mrs. Shotkin's death.

"The mootness doctrine is derived from the constitutional requirement that federal courts may only decide live cases or controversies." Irish Lesbian & Gay Org.,143 F.3d at 647.  A case becomes moot when a dispute is "no longer embedded in any actual controversy about the plaintiffs' particular legal right", "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (internal quotation marks and citation omitted).  However, if the parties continue to have a "concrete interest, however small, in the outcome of the litigation", the matter is not moot.  Chafin v. Chafin, 568 U.S. 165, 172 (2013).  "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Knox v. Serv. Emps. Int'l Union, 567 U.S. 298, 307 (2012); see also Hassoun v. Searls, 976 F.3d 121, 128 (2d Cir. 2020) (same).

In her Complaint, Mrs. Shotkin disputed the lawfulness of the government's tax lien on the Property.  See Compl. at § D; see also Pls.' Mem. at 5 ("There is one claim in this action: To quiet the title to the Property").  Because it was Mr. Shotkin, not Mrs. Shotkin, who owed federal taxes, she alleged there was "no legal basis" for a tax lien against Mrs. Shotkin's property.  See Compl. at § D.  Neither party disputes, however, that legal basis exists for a tax lien against property in which Mr. Shotkin holds an interest.  Indeed, at oral argument, the plaintiff conceded that the government is entitled to exert a lien against Mr. Shotkin's property.  Thus, the government argues, if a portion of the Property belongs to Mr. Shotkin (at least, for federal tax lien purposes) after Mrs. Shotkin's passing, then the tax lien is properly attached to the part of the Property that Mr. Shotkin owns, and Mrs. Shotkin's quiet title action is moot.

8

It is here that the parties disagree: the plaintiff asserts that Mrs. Shotkin's Estate continues to hold title to the entire Property, whereas the government contends that title to one-half of the Property passed by intestate succession to Mr. Shotkin immediately upon his wife's death.  Under the government's interpretation of the applicable law, it is Mr. Shotkin rather than the Estate who now owns part of the Property for the purposes of the federal tax liens, mooting the quiet title action and placing the Complaint beyond the jurisdiction of this court.  In effect, whether this court has jurisdiction depends on whether or when title passed from Mrs. to Mr. Shotkin.

Under Connecticut law, the surviving spouse of a decedent who dies intestate "shall take the first $ 100,000 plus one half of an intestate estate." Hynes v. Jones, 331 Conn. 385, 394 (2019) (citing Conn. Gen. Stat. § 45a-437(a)).[8]  Furthermore, title to real property passes immediately upon death to the heirs of the deceased owner, including a surviving spouse.  City National Bank v. Bridgeport, 109 Conn. 529, 538 (1928); see also Bender v. Bender, 292 Conn. 696, 721 (2009) ("[U]pon the death of an owner of real property, title to the decedent's property passes to his or her heirs.'').  Because title to an estate passes directly to a decedent's heirs, "neither the executor nor the administrator holds title." Stepney Pond Estates, Ltd. v. Monroe, 260 Conn. 406, 433 n.28 (2002).

However, the title passed to a decedent's heirs is not absolute, but remains "subject to the right of administration." Id.; see also Scott v. Heinonen, 118 Conn. App.

---

[8] General Statutes § 45a-437 (a) provides in relevant part: "If there is no will . . . the portion of the intestate estate of the decedent . . . which the surviving spouse shall take is . . . (3) If there are surviving issue of the decedent all of whom are also issue of the surviving spouse, the first one hundred thousand dollars plus one-half of the balance of the intestate estate absolutely . . . ."

577, 583–84 (2009). It is "well settled . . . that an executor has possession and control of a decedent's real property in the course of administering and settling the estate . . . and this possession relates back to the time of the decedent's death." Bender, 292 Conn. at 721.  An executor or administrator's right to "possession and control" over property is limited and does not extinguish an heir's title in that property unless the court orders sale of the property to settle the estate's debts.  See Scott, 118 Conn. App. at 584-85. When an administrator who is in possession of property subsequently exercises the power to sell the land, the heirs are deemed never to have taken title, and the title passes from the estate, not from the heirs.  Bender, 292 Conn. at 721–22; see also O'Connor v. Chiascione, 130 Conn. 304, 306 (1943) (the title of an heir is "defeated should it be necessary for the administration of the estate that [the real property] be sold by order of the court, and subject to the right of the administrator to have possession, care and control of it during the settlement of the estate, unless the probate court shall otherwise order." (Internal quotation marks omitted)).  Thus, to determine whether title to the Property passed from Mrs. to Mr. Shotkin or remained in the Estate, it is essential to determine whether the Estate has debts to settle that require sale of the Property, as well as whether the Probate Court ordered such a sale.

Here, the plaintiff's theory is that the Estate continues to hold title to the Property because the Property "will be needed to satisfy the Lender's claims against the [E]state." See Pl.'s Response at 10.  Thus, title will pass from the Estate to the creditors, bypassing the heirs, including Mr. Shotkin.  See Bender, 292 Conn. 696 at 721-22. However, as the government points out and the plaintiff conceded at oral argument, the Property is not needed to satisfy any claims, as no claims against the Estate currently

exist.  The only claims that the plaintiff has identified are <u>potential</u> claims by the Lender.
<u>See</u> Pl.'s Response at 10.  While the Mortgage does state that it becomes due when
Mrs. Shotkin dies and Mr. Shotkin no longer has a legal right to occupy the Property, the
Lender has not sought to collect on the Mortgage.  Speculative future claims by entities
that are not creditors of the Estate are not sufficient to prevent title from passing from a
decedent to her heirs.  <u>See, e.g.</u>, <u>Tax Collector v. Miley</u>, 34 Conn. App. 634, 639-640
(1994) ("The only interest that an administrator has in real property is the power to
protect the rights of creditors of the estate . . . The administrator's interest in the
property is minimal and there is no necessity to have the administrator as a party in
order to resolve [a] controversy [regarding that property]."); <u>Stanley v. Appeal from
Prob.</u>, No. CV99363895S, 2002 WL 31600741, at *2 (Conn. Super. Ct. Nov. 6, 2002)
(determining a decedent's appeal to contest conservatorship of a decedent's estate and
person was moot, noting "[w]ith respect to the argument that [the plaintiff's] title to real
property may be contested by someone in the future, no evidence was presented before
this court that the executors of the decedent's estate or anyone else is contesting the
transfer. This claim is speculative.").

Bolstering the government's position that no claims exist against the Estate
requiring the sale of the Property, the Mortgage is non-recourse, so neither Mrs. Shotkin
nor her Estate incurred any personal liability as to the Mortgage. [9]  The only recourse
available to the Lender is foreclosure and sale of the property.  <u>See</u> Mortgage at ¶ 11.

---

[9] At oral argument, plaintiff's counsel represented that the Lender could seek recourse against
Mr. Shotkin as non-borrowing spouse if certain conditions, such as upkeep of the Property, were not
fulfilled.  However, plaintiff's counsel also made clear that the Lender has asserted no claims against the
Estate.

Thus, the Lender need not make any claims against the Estate, and the Lender is not a creditor of the Estate.  See, e.g., Padula v. Padula, 138 Conn. 102, 106–07 (Conn. 1951) ("it is not essential for a mortgagee to present a claim to the administrator of the estate of his mortgagor in order to enforce his interest in the mortgaged property . . . .") (holding that where the cause of action is to clear the title of property rather than to settle a personal obligation of the decedent, no claim need be submitted to the estate's administrator).

Furthermore, the Probate Court has not entered an order authorizing the Administrator to sell the residence to pay any debts of the Estate.  Neither the Lender nor other potential creditors hold claims against the Estate that must be settled by the Administrator.  Under Connecticut's laws of intestate succession, title thus passed immediately to Mrs. Shotkin's heirs, and the Administrator's rights in the Estate do not constitute an interest that displaces that of her heirs.  See Brill v. Ulrey, 159 Conn. 371, 375 (1970) ("Where . . . an executor seeks to institute and maintain an action to quiet title to real property without alleging and proving that the property is needed to settle claims against the estate, we do not think that the statutory requirement of interest in the property is sufficiently met.").

Finally, the plaintiff cites a Connecticut Supreme Court case, Brill v. Ulrey for the proposition that the representative of a decedent's estate has "sufficient interest in" an estate to maintain a quiet title action under several circumstances.  159 Conn. 371.  The Brill court held that a representative may bring a quiet title action on behalf of an estate when (1) "the property is needed to satisfy a claim against the estate" or (2) "the decedent himself had instituted an action to quiet title prior to his death . . . ." Id. at 374-

75; see also Miner v. Miner, 137 Conn. 642, 646-47 (Conn. 1951) (holding that an administrator could continue pursuing an action originally brought by a decedent to quiet title to real property).

Brill, however, does not further the plaintiff's case.  As to Brill's first prong, the court has already noted that there are no claims against the Estate that require the Administrator to sell the Property.  Brill's second prong—that Connecticut courts have permitted an administrator to maintain a quiet title action where the decedent himself first brought the action—is inapposite for two reasons.

First, the Brill court's observation appears in dicta, relaying the holding of another Connecticut Supreme Court Case, Miner v. Miner, 137 Conn. at 642.  The Brill court did not, itself, face circumstances where an administrator or executor sought to litigate claims initially brought by a decedent.

Second, Miner does not support the plaintiff's contention that title has not passed from Mrs. to Mr. Shotkin.  In Miner, an administrator prosecuted a quiet title action on behalf of a decedent and, after judgment issued, the administrator appealed and claimed for the first time that the court did not have jurisdiction because the administrator was not a proper party.  Id. at 646.  The court, noting that "[c]laims of this character are not regarded with favor", found that Connecticut's survival statute was "adequate to prevent a vacation of the judgment . . . it specifically authorizes the action taken by [the administrator] even though the legal title may be in the heirs or devisees." Id. at 646-47.  The court reasoned that the "executor or administrator has, at common law, the right and duty to recover or clear title to real property when the estate is insolvent." Id. at 647.

Thus, while the fact that Mrs. Shotkin brought this action before her death may be relevant to the Administrator's statutory standing under Connecticut law to continue to pursue the quiet title claims, legal title to the Estate nonetheless passes to Mrs. Shotkin's heirs because the Estate is not insolvent, and the Property is not needed to satisfy a claim against the Estate.  See also LaFlamme v. Dallessio, 261 Conn. 247, 259 (2002) ("In both [Claydon v. Finizie, 7 Conn. App. 522, 526 (1986)] and Brill . . . in order for the executors to exercise some power that would have been in derogation of the rights of the decedent's heirs, the executors were required to establish that the property was needed to meet some claim against the estate."); c.f. Poglitsch v. Camp Bethel Ass'n, Inc., No. CV196018358S, 2021 WL 1400927, at *9 (Conn. Super. Ct. Mar. 1, 2021) (noting that legal title passes to heirs or devisees upon a decedent's death, although the Superior Court permitted the executor to maintain a quiet title action commenced by the deceased plaintiff).

Because legal title passed to Mrs. Shotkin's heirs upon her death, there is no longer any actual, redressable injury to the Estate that this court could remedy.  Rather, Mrs. Shotkin's heirs are the parties who would be impacted by any decision rendered here.  Were the court to find that the tax liens were not properly attached to the Property in the first instance, it is Mrs. Shotkin's heirs, not Mrs. Shotkin's Estate, who would inherit the Property free of the tax liens.  On the other hand, were the court to find that the tax liens were properly attached to the Property, then part of the Property belonging to Mrs. Shotkin's heirs, not her Estate, would continue to be encumbered by the liens. Therefore, the question whether tax liens are properly attached to any portion of the

Property is moot as to Mrs. Shotkin and her Estate, because neither she nor her Estate continues to hold an interest in the Property.[10]

Because there is "no longer . . . any actual controversy about the [Estate's] particular legal right", see Already, LLC, 568 U.S. at 91 (internal quotation marks and citation omitted), and "it is impossible for [the] court to grant any effectual relief whatever to the prevailing party", Knox, 567 U.S. at 307, Mrs. Shotkin's Complaint is moot.[11]

    B.    Adjudicating the Merits

Because Mrs. Shotkin's original Complaint is moot, it no longer presents a case or controversy that falls within this court's jurisdiction.  The government, however, has filed a separate Complaint that has been consolidated into this action.  Consolidation is "a matter of convenience and economy in administration" and "does not merge the suits into a single cause, or change the rights of the parties . . . ." Johnson v. Manhattan R. Co., 289 U.S. 479, 496–97 (1933); see also Cole v. Schenley Indus., Inc., 563 F.2d 35, 38 (2d Cir. 1977) ("Consolidation under Rule 42(a), Fed.R.Civ.P., is a procedural device designed to promote judicial economy, and consolidation cannot effect a merger of the actions or the defenses of the separate parties").  Thus, while a consolidation order may result in a single unit of litigation, such an order does not create a single case for jurisdiction purposes.  See Cella v. Togum Constructeur Ensemleier en Industrie

---

[10] The court notes that the plaintiff raised arguments related to Mr. Shotkin's right to continue to reside on the Property and his state law disclaimer of his interest in the Property.  Mr. Shotkin, who is not a party to the instant case in his individual capacity, may raise these claims in the related case, 3:21-cv-01164-JCH. However, these claims regarding Mr. Shotkin's individual interests do not alter the court's determination that the Estate has no remaining interest in the Property.

[11] Mrs. Shotkin neither alleged nor sought monetary damages in her Complaint against the government arising out of the lien on her titled Property.  Her only relief sought—removal of the lien/quieting of title—was moot upon her loss of title upon her death, when it became "impossible for [the] court to grant" the requested relief as to Mrs. Shotkin or her Estate.  Knox, 567 U.S. at 307.

<u>Alimentaire</u>, 173 F.3d 909, 912 (3d Cir.1999); <u>see also</u> <u>Russo v. City of Hartford</u>, 158 F.

Supp. 2d 214, 225 (D. Conn. 2001) (same).  In deciding the extent to which to

consolidate cases, "[d]istrict courts enjoy substantial discretion." <u>Hall v. Hall</u>, 138 S. Ct.

1118, 1131 (2018) (citing 9A Wright & Miller § 2383 (collecting cases)).

 Here, the two actions have already been consolidated. <u>See</u> <u>Order</u> (Doc. No. 62).

However, a procedural clarification is warranted.  The court's lack of jurisdiction over

Mrs. Shotkin's Complaint does not deprive the court of jurisdiction over the

government's Complaint.  <u>See</u> <u>Russo</u>, 158 F. Supp. 2d at 225.  Accordingly, the

government's action remains pending.

## V. CONCLUSION

 For the foregoing reasons, the court dismisses the initial Complaint (Doc. No. 1)

for a lack of jurisdiction.  Because the court lacks jurisdiction over the initial Complaint,

the Motions for Summary Judgment filed by the Administrator (Doc. No. 43) and the

government (Doc. No. 44) are terminated as moot.  Furthermore, this decision, which

the court reaches on jurisdictional grounds, should not be construed as a determination

on the merits of the issues that remain to be resolved in the consolidated matter.  <u>See</u>

<u>St. Pierre v. Dyer</u>, 208 F.3d 394, 400 (2d Cir. 2000) ("a dismissal for lack of subject

matter jurisdiction is not an adjudication of the merits . . . .").

 The government's Complaint (Doc. No. 1, 3:21-cv-01164-JCH) will be the

operative Complaint in this action, and all filings should be docketed on that case.

 Because counsel was appointed in this case under Local Civil Rule 83.10, this

court shall retain jurisdiction to adjudicate any dispute between such counsel and his or

her client arising from the representation in this case, including without limitation, a grievance or malpractice claim.

       **SO ORDERED.**

           Dated at New Haven, Connecticut this 6th day of December 2021.


                          _/s/ Janet C. Hall_____
                          Janet C. Hall
                          United States District Judge